## R. O. SHOEMAKER V. THE STATE.

### No. 2627.   Decided October 22, 1913.

**1.—Aggravated Assault—Charge of Court—Excessive Force.**

Where, upon trial of aggravated assault, the evidence did not show that a charge of excessive force, which was unduly emphasized, was called for, the same was reversible error.

**2.—Same—Provoking Difficulty—Charge of Court—Converse Proposition.**

Where, upon trial of aggravated assault, the evidence raised the issue of provoking the difficulty, but there was also evidence to the contrary, the court in submitting a charge on the issue of provoking the difficulty should also have submitted a charge on the converse of the proposition.

Appeal from the County Court of Coleman.   Tried below before the Hon. F. M. Bowen.

Appeal from a conviction of aggravated assault; penalty, a fine of $25. The opinion states the case.

*Critz & Woodward,* for appellant.—On question of provoking the difficulty and using excessive force: Mozee v. State, 51 S. W Rep., 250; Parish v. State, 153 S. W. Rep., 327; Aycock v. State, 55 Texas Crim. Rep., 142, 115 S. W. Rep., 590; Marsden v. State, 54 Texas Crim. Rep., 70, 110 S. W. Rep., 897; Best v. State, 58 Texas Crim. Rep., 327, 125 S. W. Rep., 909; Rice v. State, 51 Texas Crim. Rep., 255, 103 S. W. Rep., 1156; McMillan v. State, 58 Texas Crim. Rep., 525, 126 S. W. Rep., 875; Burnett v. State, 51 Texas Crim. Rep., 20, 100 S. W. Rep., 381; Branch's Crim. Law, secs. 448, 449.

*C. E. Lane,* Assistant Attorney-General, and *Woodward & Baker,* for the State.—On question of court's charge: Branch's Crim. Law, sec. 465.

HARPER, JUDGE.—Appellant was prosecuted and convicted of an aggravated assault, and his punishment assessed at a fine of $25.

Appellant was chairman of the board of school trustees of the Voss school in Coleman County.   A table was taken out of the schoolhouse one night and carried to a residence to play dominoes on.   Chas. Wilson afterward moved to this house and used the table.   When he left he carried the table with him.   He testified that as he passed the black-smith shop in Voss appellant called to him, but as he was driving a mare that would not stand he called back to appellant to come on down to the store.   That appellant came to the store "and asked me about a table he said belonged to the school at Voss that he claimed I had taken with me to Fisher County when I moved, and one word brought on another and he said to me that I had stolen the table, and when he said that, I struck him in the face with my fist, and was in the act of striking him again when he shot me in the left arm with a pistol.   The ball went in about six inches above the hand on the inside of my arm and the doctor cut it out on the same side of my arm about five inches above where

it went in. The pistol looked like a 32-calibre, anyhow it was a small pistol. . . . . At the time I hit him I intended to either whip him or get whipped. I did not want to beat him up but just give him a good whipping or get whipped. He shot me in the arm before I could hit him the second time. I was in the act of striking him again when he fired, my arm was in a striking position, shoved out directly towards him and directly in front of him when he fired. He had made no effort to strike me at the time I first struck him, and I was not hitting him for anything he had done except what he said about the table, that is, about accusing me of stealing the table. Yes, I was mad, of course, when I struck him because he had said I had stolen the table. I am about six feet one inch tall and weigh about 160 pounds."

Appellant testified: "I know the witness and knew him in January of 1912. I was at that time and am now the chairman of the board of trustees of that school district. On the day I had the difficulty with Wilson I had started to my farm and went by the shop to get some plow points to take with me. While I was at the rear of the shop I saw the witness Wilson coming, and I called to him to stop a minute, I wanted to see him. He said he had a mare that would not stand and for me to come on down to the store. When I got there I asked him if he had taken that little round table off with him, and he said, 'Yes,' and I said, 'Well, Charley, that belongs to the schoolhouse and we want it.' He said, 'By God, it is in Fisher County and get it if you can.' I said, 'Now, Charley, you know that table did not belong to you when you took it off,' and when I said that he struck me right here by the side of the left eye and it hurt a little but did not knock me down but it kinder stung and hurt. He was striking at me again and I pulled my pistol out of my pocket and fired to one side of him with no aim or purpose of hitting him but to frighten him so that he would not strike me again. I did not shoot at him or to strike him. . I merely wanted to stop him from assaulting me. I was afraid he would inflict a serious injury upon me and that is why I fired the shot. I could have shot him a half dozen times if I had wanted to; no, five times, for it was a five-shooter. No one prevented me from shooting him again. I saw he was not going to strike me again and I did not fire any more. I fired to protect myself from the danger I thought I was in and did nothing more than I thought was necessary at the time." Appellant was much smaller than Wilson, weighing only 135 pounds. Space Riddle corroborates appellant in his testimony.

Among other things the court charged on "excessive force" in three paragraphs of the charge, and we think if a charge on that issue was called for, the court unduly emphasized that theory of the State. Taking the record as a whole we do not think a charge on excessive force was called for, and should not have been given. Appellant says he fired to stop the assault Mr. Wilson, a much larger man, was making, with no intention of shooting him, and apparently if Mr. Wilson had not been striking at him the second time he would not have shot him. It

further appears that appellant voluntarily ceased shooting as soon as Wilson ceased making the assault on him. It appears from all the testimony that Wilson was the assaulting party, and appellant used the only means at his command to stop Wilson, and voluntarily ceased when Wilson ceased. Had he continued to shoot after Wilson had ceased his assault, then the doctrine of excessive force would have been in the case.

However, it was not error for the court to submit the issue of provoking the difficulty. If appellant went to see Wilson about the table, and, after conversing with him, called him a thief, as Wilson says he did, he must have known and appreciated the fact that this would provoke a difficulty, and his right of self-defense was impaired. Neither do we think the criticism of the charge on provoking the difficulty tenable. It fairly submitted that issue as raised by the testimony. However, the court should have charged the jury on the issue of self-defense, as requested in appellant's charge No. 11, if the jury should find under proper instructions that he did not call Wilson a thief, or use language calculated to provoke a breach of the peace. This was a contested issue, Wilson stating that appellant did use such language, while appellant equally as earnestly insists he did not do so.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*