## R. C. FISHER v. THE STATE.

### No. 3162. Decided June 10, 1914.

**1.—Simple Assault—Aggravated Assault—Charge of Court—Self-defense—Force.**

Where, upon trial of aggravated assault and a conviction of simple assault, the evidence showed that the assaulted party first made an assault upon the defendant who testified that he believed the party assaulting was going to kill him, he having drawn a six-shooter upon him some time prior thereto, a charge of the court which required the jury in his charge on self-defense to find that defendant did not use greater force than was reasonably necessary to prevent such assault or otherwise to convict him was reversible error. Following Marsden v. State, 53 Texas Crim. Rep., 458, and other cases.

**2.—Same—Theory of Defense.**

It is elementary that the defense of an accused, where raised by the evidence, must be submitted even though the other evidence would justify a finding against him. See proper distinction where a charge on greater force is proper. Approving Vinson v. State, 55 Texas Crim. Rep., 490.

**3.—Same—Self-defense—Rule Stated.**

The defendant was entitled to have self-defense submitted from his standpoint, and the charge of the court requiring that he use no more force than was necessary to protect himself from the party assaulted was reversible error.

Appeal from the County Court of Collin. Tried below before the Hon. H. L. Davis.

Appeal from a conviction of simple assault; penalty, a fine of $5.

The opinion states the case.

*W. R. Abernathy* and *F. E. Wilcox,* for appellant.—On question of court's charge: Parish v. State, 69 Texas Crim. Rep., 254, 153 S. W. Rep., 330, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant appeals from a conviction for simple assault.

His defense was self-defense. This is the second appeal. The first is reported in 68 Texas Crim. Rep., 297, 151 S. W. Rep., 544.

He has properly raised and complains of these charges of the court, towit: "Every person is permitted by the law to defend himself against any act of unlawful violence offered to his person, *but in exercising this right of self-defense he is only permitted to use such degree of violence as is reasonably necessary to prevent or protect himself against such unlawful violence. . . .*" This part of the court's charge was an abstract statement of the law. When the court applied this and submitted the issue to the jury for a finding, which is the other charge complained of, he told the jury: "Now, if you believe from the evidence that the defendant, in inflicting the injury, if he did, upon the said J. D. Killough as charged in the second count of the indictment acted in his own self-defense against an assault made by said J. D. Killough upon him, or to prevent such assault, and that *he did not use greater force than*

*was reasonably necessary to prevent such assault,* then you will find him not guilty."

We have underscored the parts of the above charges of which appellant complains. Under the decisions of this court, the charges ought not to have been given and present reversible error. Marsden v. State, 53 Texas Crim. Rep., 458; Aycock v. State, 55 Texas Crim. Rep., 142; Parish v. State, 69 Texas Crim. Rep., 254, 153 S. W. Rep., 330; Russell v. State, 71 Texas Crim. Rep., 86, 158 S. W. Rep., 546; Shoemaker v. State, 71 Texas Crim. Rep., 445, 160 S. W. Rep., 356.

We would not be understood as holding that such a charge is error in all cases where self-defense is an issue. The proper distinction is made where such charge is proper, in Vinson v. State, 55 Texas Crim. Rep., 490, and cases there cited.

It is elementary that the defense of an accused, where raised by the evidence, must be submitted, even though the other evidence would justify a finding against him.

The evidence in this case on this issue from appellant's standpoint is substantially this: . Killough, the assaulted party, was the agent of the railroad company at the little town of Prosper in Collin County. Appellant Fisher, among other things, raised hogs. On May 15, 1913, Fisher took some hogs to said station for shipment on the railroad to Fort Worth. He unloaded the hogs in the stock pens of the railroad from his wagons, intending to load them from the stock pens into the car. The stock pens were several hundred yards from the depot where Killough lived. Fisher went from the stock pens down to the depot to see Killough, the agent, about the car and loading his hogs. He found no one there. After waiting awhile he went back up to the stock pens to see about unloading others of his hogs which had just reached there. Later he went back to the depot to see Killough, the agent, about the matter. He then saw Killough about the building leisurely fixing ice water off some distance, not accessible to Fisher at the time. After waiting some ten minutes, Killough made his appearance when Fisher then asked him when a train would go through to haul his hogs. Killough told him he didn't know anything about it, but promised to find out for him. Fisher went back to the stock pens again to see about his hogs and later returned to the depot to see Killough again. When he went back to the depot he asked Killough if he had found out anything about the train. Killough said he had not. Fisher asked him if he wanted to bill out the hogs. Killough replied that he would attend to him when a passenger train, which was then expected, had gone through. From Fisher's standpoint and testimony Killough would give him no satisfaction, apparently very neglectful and indifferent to him and his business, and went about other things. Mr. Graham, who had helped haul some of the hogs in, was with Mr. Fisher and Fisher said to Mr. Graham, "They must be trying to run this office like they are at Frisco," and he and Graham then walked out of the depot, sat down and waited awhile. They could see no passenger train coming and they went back

into the waiting room, stepped up to the ticket window and asked Mr. Killough how late he could get his hogs billed out. Killough then began to curse and abuse Fisher, among other things, saying: "See here, Bob Fisher, God damn, if you think you can come up here and run this depot like you have Frisco you are sadly mistaken. God damn you, I will smash your face." Fisher attempted then to apologize to him, telling him that he meant no affront to him, by what he had said. Killough then said to him, "Bob Fisher, God damn you, I know you, you can't come up here and run over me." That Killough then ran back to a drawer in his office, jerked it out and got out a six-shooter. Mr. Chapman, a friend of Killough, was in the ticket room with Killough at the time and got between him and the window where Fisher was and said to Killough, in substance, "You can't do that, you mustn't do that." Fisher, seeing that Killough was about to assault him with a pistol, at once departed from the depot and did not return to it again. Fisher was told by two parties that Killough was a very bad man, had killed his father-in-law and Fisher was afraid of him.

Fisher let his hogs stay in the stock pens at the railroad that night. The next day he tried from some of the other officials of the railroad to arrange about the shipment of his hogs, but could get no satisfaction thereabout. The next morning he got his wagons and went to the stock pens to reload his hogs in his own wagons from the stock pens and take them away therefrom. The stock pens were locked up and he couldn't get in them. He thereupon took an ordinary handsaw and was sawing one of the planks in two and building a chute therefrom to run his hogs through this hole to be thus made and load them in his wagon, which was the only practical way, it seems as he thought, to do so. Fisher said the reason he didn't go to the depot to see Killough about getting his hogs out of the stock pens was that Killough had run him off from there with a pistol the Monday before and he had been advised to stay away from him, and decided that it was best to have no further business with him and that he was afraid of him. While he was thus engaged, Killough went from the depot, some 400 to 600 yards from the stock pens to where Fisher was. Fisher didn't discover him till he got right at him when Killough said to him not to tear up the stock pens; that Killough then seized him by the collar with his left hand, ran his right hand in his pants pockets and when he did so Fisher jerked the handsaw back over and struck Killough with it. He said, "I hit him because I was afraid of him. I thought he was going to kill me." After he had struck him once with the saw, Killough began to fight him and he struck him another lick with the saw, all, as he claims, in self-defense of the assault Killough was then committing upon him under the circumstances and from his standpoint, as detailed by him.

The evidence as to the facts of the immediate assault was conflicting. For a further statement of the evidence see report of former appeal. It may be that the preponderance of the evidence was in favor of the State and against appellant's contention. However that may be, the

appellant was entitled to have his self-defense submitted from his standpoint and not hampered or curtailed as was done by the charge of the court in this case, requiring that he use no more force than was necessary to protect himself from Killough's assault on him. We think it unnecessary to discuss the question further or to give any more of the evidence. What we have said shows the error of the court's charge.

Nothing else raised by appellant shows any error and it is unnecessary to discuss any further question. For the error of the court in the charges above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*