ROBINSON *v.* LITTLE ROCK RAILWAY & ELECTRIC COMPANY.

## Opinion delivered June 1, 1914.

1.  NEGLIGENCE—QUESTION FOR JURY.—When the evidence, viewed in the strongest light in favor of the plaintiff, who was injured due to the alleged negligence of defendant, is such that reasonable minds might differ as to whether the injury was caused by defendant's negligence, a question is made for the jury.   (Page 232.)

2.  STREET RAILWAYS—INJURY TO PASSENGER—NEGLIGENCE—QUESTION FOR THE JURY.—Plaintiff, a passenger on a street car, after signaling the conductor to stop at the next corner, arose, and was thrown from the car, when the same turned a corner quickly, without stopping.   *Held,* it was a question for the jury, whether the conductor was negligent in failing to give a signal to stop, or in not seeing plaintiff's signal to him; or in failing to see plaintiff rise from her seat as the car approached the corner, and whether, if he saw her, he was negligent in not signaling the motorman to stop.   (Page 235.)

3.  STREET RAILWAYS—CONDUCTOR—DUTY TO PASSENGERS.—It is the duty of the conductor of a street car to keep on the alert to see if passengers wish to alight.   (Page 236.)

4.  STREET RAILWAYS—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE—NOTICE TO REMAIN SEATED.—It is not contributory negligence, as a matter of law, for a passenger, upon approaching a street corner, to arise from his seat, preparatory to leaving the car, after having given the conductor a signal to stop, although the company gives the passenger notice to remain seated until the car stops.   (Page 236.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellant sued appellee for damages arising out of personal injuries.   She alleged that she was a passenger of the defendant (appellee); that there was a sharp curve in the line of railway at Wright avenue and Schiller avenue; that she desired to leave the car at that point and when in about a half block of that point she signalled the conductor to stop the car; that the conductor ignored the signal, but continued and accelerated the speed of the car; that she believed the car would be stopped in accord with her signal, and when within a few

feet of Wright avenue and Schiller avenue she arose from her seat for the purpose of alighting from the car when it was stopped at that point; that the motorman and the conductor carelessly and negligently ran said car at an unreasonable rate of speed around said curve, and that on account of said negligence she was thrown from the car against the pavement and seriously injured, to her damage in the sum of $5,000, for which she prayed judgment.

The appellee denied the allegations of the complaint, and set up contributory negligence on the part of the appellant.

After the evidence was adduced, appellant, by leave of the court and with the consent of the appellee, amended her complaint to conform to the proof, alleging that she believed the conductor observed the signal given by her, and that there was a decrease in the rate of speed of the car, and that she arose and was standing in the car to alight when it stopped, and that the conductor negligently failed to observe her signal and negligently failed to observe plaintiff standing in the car.

The testimony was as follows: Appellant was a passenger on appellee's Fifteenth Street car on the night of April 3, 1909. She was fourteen years of age. She intended to get off at the last curve on Schiller Avenue and Wright Avenue. As she approached the point going into Wright Avenue from Schiller Avenue she looked for a bell but there was none on the car. She raised her hand to signal the conductor, who was on the back part of the car. The car was an open summer car. She did not arise to give the signal. She believed the conductor saw her signal. She picked up her bundles and stood between the seats. While she was standing the car started around the curve and she thought it would stop. The car was "slowing down." About the time the car got around the curve was the last thing she remembered. She pointed out on the plat where she gave the signal which was about half way between the first curve and the last curve. The car was "slowing down" as it went

around the last curve. She thought the car was going to stop; was standing up.

She first stated that she was around the curve, but, upon being questioned, stated that she could not say as to that, but pointed out about where she was. She was standing between the seats while the car was making the curve, and pointed out about where she was thrown off. She was thrown off right around the curve off of Wright Avenue on Schiller Avenue, after she had passed around the curve. She was asked what caused her to be thrown off of the car and replied as follows: "Why, going around the curve, I think it was, so fast; going around the curve or something, after it went around; just after we went around it went faster, or something was the cause of it."

She knew the car went faster by the motion of the car. She could feel the increase of the speed in her body. She was holding two small bundles in her right hand, and the last she remembered doing with her left hand was taking hold of the back of the seat in front of her. She never got on the running board of the car. The car does not usually stop until it gets around the curve. She was about in the center of the car, and there was just about room for one passenger to sit between her and the outside of the car. She thought the car was going to stop after it went around the last curve, and got up from her seat just about the time the car entered the last curve.

There was a sign on these cars which read, "Remain seated until the car stops." She knew it was there at the time of the trial, but didn't pay any attention to it at the time of her injury, and didn't remember whether she ever noticed it before. She didn't attempt to alight, but something threw her out while she was standing in the car as it rounded the curve. She knew she was thrown off just after she got around the curve. She was asked the following question: "Can you explain, Miss Robinson, why the quickening of the speed of the car should throw you across the floor of the car and across

the end seat and across the running board of the car?" and answered: "No, sir; unless the car had jerked or something."

She was also asked, "If the car had jerked, would not that have caused you to sit down in the seat behind you, and not throw you out on the pavement?" and answered, "I suppose it would; I don't know."

She stated that she could not explain how it occurred; that it quickened its speed and threw her out on the ground. She stated that she never stepped off the car when the car was going. She was asked this question: "You can conceive of no means standing on the floor of the car in the position you described, by which the quickening of the speed of the car could have thrown you out on the pavement?" and answered, "No, sir."

Witness Mathes testified substantially as follows: He was a passenger on the car at the time plaintiff fell. A signal was given by the plaintiff on approaching the end of the private way, and was disregarded as to the regular stop at Wright Avenue and Schiller Avenue. It was sounded at the end of the private way. It was only two car-lengths from the corner in question. Witness gave no signal to the conductor, but plaintiff did. There was no reduction in the speed after the signal was given by her. She arose from her seat and stood between the two seats. The conductor did nothing; he could not have reached her if he had wanted to. The car went around the curve pursuing the regular rate of speed. Witness perceived no jerks. The car made no lurch except such as would occur from rounding an ordinary sharp curve. There was no sudden movement forward. Plaintiff seemed to be thrown off by the sudden rounding of the curve without a stop signal. She rolled over several times and finally stopped, face down, in the dirt, probably 125 feet from the corner of Wright and Schiller avenues. She was picked up insensible. At the time she fell from the car it was just completing the round of the curve. She fell on Schiller Avenue. Witness saw her rise and give a signal, but he did not remember the kind of signal except that it was a bell signal, but witness did not re-

member whether it was a rope or a button. The conductor was in the extreme rear·end· of the car, on the platform behind the glass partition. Witness didn't know that the conductor received it. The car was finally stopped by an emergency signal after the accident had happened.

The appellee demurred to the evidence. The court sustained the demurrer and instructed the jury to return a verdict in favor of the appellee, and from a judgment in appellee's favor, this appeal has been duly prosecuted. Other facts stated in the opinion.

*Oscar H. Winn* and *Manning, Emerson & Morris,* for appellant.

1. Following the well established rule, in determining whether or not the court was right in directing a verdict for the appellee, the evidence will be given its strongest probative force in favor of the appellant. 89 Ark. 222-227; 95 Ark. 560; 96 Ark. 394.

2. It is equally well established that a jury question is presented where the evidence is such that reasonable minds may reach different conclusions from that evidence, and in such case it is always error to direct the verdict. That is the situation presented here.

3. "A common carrier of passengers by street car is required to exercise the highest degree of skill and care which may reasonably be expected of intelligent and prudent persons employed in that business, in view of the instrumentalities employed and the dangers naturally to be apprehended." *Supra.*

When the appellant arose from her seat in the car, that was a signal to the conductor, of which it was his duty to take notice, that she desired to alight at the next corner. 1 Nellis on Street Railways, § 303.

"The conductor must be alert to see if any one is alighting or attempting to alight before he starts the car, and *his absorption in other duties will aggravate rather than excuse the charge of negligence in starting while a passenger is attempting to alight."* *Id.,* § 305. See, also,

as sustaining appellant's case throughout, 80 Pac. (Cal.) 780.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. It is in proof that there was a sign on the backs of the seats, in letters about two and one-half inches high, requesting passengers to remain seated until the car stops. There is undisputed and positive testimony on the part of appellant and her witnesses that there was no sudden jerk or lurch of the car. The burden of proof was upon appellant to show negligence on the part of appellee. That burden was not discharged by allegation or proof that after the car rounded the curve, it went faster, for that was not negligence; nor by saying that she thought it was going to stop and did not, for the failure to stop was not negligence; nor by saying that she was misled by the car rounding the curve slowly, for it was prudent to do so rather than negligent.

It was incumbent on appellant to show by affirmative proof, some act which would constitute negligence upon the part of appellee in the operation of the car. 111 App. Div. 404; 97 N. Y. Supp. 841; 75 Ark. 211.

2. This court has announced the correct rule that, "Carriers of passengers by street railways are not insurers of the safety of their passengers, nor bound absolutely to carry them safely, without injury; nor to provide such measures to protect them against accidents and injuries caused by their own acts or omissions, which the exercise of reasonable foresight would not anticipate." 75 Ark. 211. The conductor is not bound to interfere to protect a passenger from danger resulting from his own act, unless the conductor could have reasonably anticipated that he would be injured without such interference. *Id.;* 76 Ark. 356. See, also, 55 Atl. 836.

WOOD, J., (after stating the facts). The court erred in directing a verdict in favor of the appellee.

The evidence must be viewed in the most favorable light for appellant, and when given its strongest probative force in her favor, we are of the opinion that reason-

able minds might reach different conclusions on the question as to whether or not the injury to appellant was caused by the negligence of the appellee, as alleged in her complaint. It was therefore a question of fact for the jury to determine.

"A common carrier of passengers by street car," says Mr. Booth, "is required to exercise the highest degree of skill and care which may reasonably be expected of intelligent and prudent persons employed in that business, in view of the instrumentalities employed and the dangers naturally to be apprehended." Booth on Street Railway Law, § 328, quoted in *Little Rock Traction & Electric Co.* v. *Kimbro,* 75 Ark. 211; also, *Oliver* v. *Fort Smith Light & Traction Co.,* 89 Ark. 229.

In the Oliver case, *supra,* the car was running very slowly or had stopped. The plaintiff was on the running board. He disengaged one hand and held onto the post of the car with the other while paying his fare, and as he was in the act of handing his fare to the conductor, the car started forward with a jerk, causing the crowd on the footboard with the plaintiff to surge back and forth, which crowded him off. In that case, we said: "The appellee, as the evidence tends to show, having slackened the speed of its car, or stopped same, for passengers to get on or off, was negligent if it started the car forward again with a sudden jerk so as to cause its passengers, who were on the footboard and exercising ordinary care for their own safety, to surge back and forth and thus to crowd and throw some of them from the train."

In *Little Rock Railway & Electric Company* v. *Doyle,* 79 Ark. 378, Doyle was a passenger of the railway company, and as the car approached the point where he wished to debark, he motioned the conductor to stop for him to get off, and the conductor obeyed and slowed the car as plaintiff was advancing to the rear end of the car, and continued to slacken its speed until he reached the step of the platform. While he was standing on the rear of the car, with his left hand holding the handrail,

and when the speed had been slackened so that he could step from the car with safety, and while he was in the act of alighting from the slowly moving car, its speed was suddenly increased, and he was thereby thrown from the car. In that case we held that the company was liable in damages, if the passenger, while in the act of stepping from the slowly moving car at a street crossing, was injured without negligence on his part by reason of the fact that the speed of the car was suddenly increased, whereby he was thrown off and injured.

Now, viewing the testimony in its most favorable aspect for the appellant, it tends to show that at a point about a half block from where appellant intended to get off the car, she signalled the conductor to stop for that purpose; that the car was "slowing down," and that the appellant thought that same was going to stop. The jury might have concluded from the "slowing down" of the car after appellant had given the conductor the signal to stop, that the conductor had observed such signal and was obeying the same by causing the speed of the car to be lessened for that purpose; that the appellant, believing that the conductor had observed the signal, and was having the speed of the car slackened in order to stop the same for the purpose of allowing her to debark, arose from her seat as the car was "slowing down" preparatory to leaving the car when the same should stop; that she was standing between the seats with her right hand clutching her bundles and her left hand holding to the back of the seat, near the end of the seat, on the right-hand side, when the car, instead of stopping, as she supposed it would do, increased its speed, thereby throwing the appellant from the same to the pavement about the time the car had rounded the curve.

There was testimony to the effect that after the car passed the curve on Wright and Schiller avenues, where the injury occurred, it was down grade, and that the car would run by itself after it got out of the bind of the curve, and if the current were turned on would accelerate its speed, causing the same to start very suddenly; that

one situated as the appellant was, two seats back from the center of the car, would be thrown out by a sudden jerk of the car, and that if she had been in front of the center of the car, it would have thrown her back, but not out of the car.

It was a question for the jury, under the evidence, to determine whether the conductor saw the signal of the appellant, and, if so, whether or not he was negligent in failing to give the motorman the signal to stop the car, and whether or not, if he did not observe appellant's signal, he was negligent, under the circumstances, in failing to observe the same. It was a question for the jury to determine also whether or not the conductor was negligent in failing to observe the situation of the appellant as she was preparing to get off the car at the usual stopping place around the curve, and if he did observe her situation, whether or not he was negligent in not having the motorman stop the car instead of permitting the speed of the car to be suddenly increased.

The appellant, by the fall, was rendered insensible. The jury would have been warranted in finding that taking into consideration her position on the car, and the violence with which she fell or was thrown from the car, and the increase of the speed of the car as it rounded the curve, that same must have gone forward with a sudden lurch or jerk, or else with a very rapid whirl around the curve. The facts bring the cause within the doctrine of the above cases.

Mr. Nellis, in his work on Street Railways, Vol. 1, § 303, says: "Where a passenger leaves his seat in a car and moves toward the door as the car comes to a stop to enable passengers to alight, such conduct may be considered as a manifestation to the one in charge of the car of an intention and desire to depart from it, and the car should not be started until he has been given a reasonable opportunity to do so." And the same author says (§ 305): "The conductor must be alert to see if any one is alighting or attempting to alight before he starts the car, and his absorption in other duties will aggravate

rather than excuse the charge of negligence in starting while a passenger is attempting to alight.''

The doctrine announced in our own cases, *supra,* and by the learned authors on Railway Law, above quoted, when applied to the facts of this record, makes it a question for the jury to determine whether or not there was negligence in the method of operating the car which resulted in the injury to appellant. To be sure, there was evidence from which the jury might have found that the appellee was not negligent, but, as already stated, this was a question about which reasonable minds might draw different conclusions, which makes it an issue of fact for the jury, and not one of law for the court. The same may be said with reference to the issue of contributory negligence. It can not be said as a matter of law that there was contributory negligence on the part of appellant because she arose as the car began to slow down on approaching the place where she expected to debark, and stood in that position with one hand on the seat and the other holding her bundles, as described in the testimony.

In *Babcock* v. *Los Angeles Traction Co.,* 60 Pac. 780, a passenger took a position in the open space in the front end of a street car, and when the car approached the street corner at which he desired to alight, he started toward the outside of the car for the purpose of leaving the same. The car was passing around a curve, and on account of its excessive rate of speed the passenger, while not holding with either hand, was thrown from the car and injured. In that case, the Supreme Court of California said: ''The court could not declare that it was contributory negligence on his part to start to get off from the car before it had come to a full stop. There is no rule of law which requires a passenger in a street car to retain his seat or other position until the car has actually stopped, and it is a matter of universal observation that thousands, every day, leave their seats to get off before the car has stopped, without sustaining any injury. The claim of the appellant that the plaintiff's attempt to get off the car while it was rounding the curve was itself

a hazardous act, from which his injury resulted, rests upon assuming the existence of other facts which could be determined only by the jury."

The doctrine of that case is sound and is controlling here on the issue of contributory negligence. The notice to passengers to remain seated until the car stops is a wise precautionary measure which passengers might do well to observe, but the failure of a passenger to comply with such request on the part of the company can not be considered contributory negligence as a matter of law. The failure of appellant to observe and obey such notice is a fact which, taken in connection with all the other facts adduced in this record, should be considered by the jury in determining whether or not she was guilty of contributory negligence.

It follows that the judgment must be reversed, and the cause will be remanded for a new trial.