STATE OF NORTH DAKOTA, Respondent, v. LEO JOCHIM, Appellant.

(213 N. W. 484.)

**Criminal law — sentence for grand larceny must be within limitations of statute.**

1. Where a defendant, upon conviction for grand larceny, is brought before the district court for sentence, it is the duty of the court to determine the punishment within the limitations fixed by statute.

**Criminal law — in sentencing for grand larceny, court should secure information from all available sources.**

2. In passing sentence upon a defendant who has been convicted of grand lar-

Annotation.—(1) Necessity that judgment rendered by court in criminal case confirm strictly to statute, see 8 R. C. L. 230.

(2) Duty of court to hear evidence to determine amount of punishment, see 8 R. C. L. 260.

(3) As to power of appellate court to reduce punishment imposed by trial court, see annotation in 29 A.L.R. 314; 8 R. C. L. 264; 5 R. C. L. Supp. 461; 6 R. C. L. Supp. 496.

ceny the district court is not bound by the statements made by the defendant upon an examination before the court after his conviction, and it is the duty of the court to ascertain from all available sources such information as will enable the court to pass sentence justly and intelligently.

**Criminal law — supreme court will not review district court's discretion.**
3. Where, in such a case, the district court imposes imprisonment in the penitentiary for a period of three years this court has no power to review the discretion of the court in fixing the term of imprisonment.

**Criminal law — three year penitentiary sentence not "cruel" or "inhuman."**
4. Imprisonment in the state penitentiary for three years, upon a conviction for grand larceny is not a cruel and unusual punishment.

Opinion filed April 21, 1927.

Criminal Law, 16 C. J. § 3004 p. 1267 n. 22; § 3065 p. 1298 n. 80 New; § 3070 p. 1300 n. 16; § 3193 p. 1355 n. 28; § 3210 p. 1362 n. 12; 17 C. J. § 3591 p. 254 n. 35.

Appeal from the District Court of Morton County, *Berry, J.*
Affirmed.
*Langer & Nuchols,* for appellant.
*C. F. Kelsch,* State's Attorney, for respondent.

Burr, J. The record in this case shows that on or about the 23d day of November, 1926, this defendant in company with one Otto Seerup and another person made a night raid on a farm in Morton county and stole some turkeys. Thereafter Seerup and defendant were arrested and on February 23d, 1927, this defendant made a confession in writing admitting his part in the raid and admitting that each one concerned in the raid stole a turkey. This confession admits, among other things, "that he was fully informed of his right to counsel and his right to trial and that he could not be compelled to testify against himself and that notwithstanding said fact he desired to enter a plea of guilty and makes this statement under oath to confess his guilt of the crime charged." The same confession further states that he "makes this statement freely and voluntarily with full knowledge of his legal rights." An information was filed in the district court against this defendant and the said Seerup which information charges the de-

fendant with the crime of grand larceny and ,is as follows, omitting
the formal parts:

"That at the said time and place the said defendants Otto Seerup
and Leo Jochim, then and there being, did wilfully, unlawfully and
feloniously take, steal and carry away certain poultry to wit: five
turkeys (5) of the value of twenty-five dollars ($25) which personal
property was then and there the personal property of and owned by
Joe Fleck and which taking, stealing and carrying away was accom-
plished by fraud and stealth by the said Otto Seerup and Leo Jochim
with the intent then and there to deprive the owner thereof."

Upon being arraigned on this information the defendant Jochim
entered a plea of guilty of the crime charged in the information and
was thereupon sentenced by the court to imprisonment in the state
penitentiary for a period of three years.

The defendant appeals from the judgment and sentence in this case
upon three grounds: First, that chapter 156 of the Sess. Laws 1925
is unconstitutional as contravening the 8th Amendment of the Con-
stitution of the United States which forbids the inflicting of cruel and
unusual punishments, as contravening § 6, article 1, of the Constitu-
tion of this state, which forbids cruel and unusual punishment, that
it violates subdivision 21 of § 69 of article 2 of the Constitution of
this state forbidding the enactment of special laws for the punishment
of crimes, that it makes possible the confining in a penitentiary for a
term of five years of any one who violates said statute by the theft of
poultry regardless of how small the value of such poultry may be.
Second, the court abused its discretion in inflicting a sentence of three
years in the penitentiary for the theft of one turkey, the value of which
did not exceed $5, which punishment is therefore cruel and unusual;
third, that the evidence is not sufficient to support or warrant the
sentence imposed and the punishment inflicted for the reason the only
evidence in the case is the written statement of the defendant in which
he states that he took only one turkey, the value of which did not exceed
$5.

There is no contention on the part of the defendant that all of the
proceedings leading up to the filing of the information, his arraign-
ment and his sentence were not perfectly regular; and it will be noticed
the defendant did not make a motion for a new trial or ask the lower

court to set aside the sentence imposed. In 1925 the legislature of this state enacted legislation dealing specifically with the stealing of "poultry or other live stock"—chapter 156 of the Sess. Laws, 1925. An examination of the information in this case shows, however, that it is drawn under the general statute—§ 9913—and not this new law. We are not, therefore, required to pass upon the constitutionality of this 1925 legislation as it is not an issue in the case. This disposes of the first point raised by the defendant. The second and the third points urged by the defendant may be considered together. The defendant says the sentence imposed is excessive, is cruel and unusual, is an abuse of discretion and not warranted by the "evidence." The record shows the defendant is in error in claiming his "confession" sets forth that the particular turkey which he admitted taking was worth but $5. The written confession says nothing whatever regarding the value of the poultry taken. But even if it did we do not see that such statement would have any bearing in this case. The defendant entered a plea of guilty of the crime charged in the information and therefore he admitted the stealing of five turkeys worth and of the value of $25. There was no evidence taken in the case because there was no trial, and there was no need of trial. The defendant entered a plea of guilty. It is true the defendant, before his arraignment, made a written confession in which he stated that in company with these other two who are mentioned by him he made this raid, and he seized one turkey while the others took some; but of course, being involved in the conspiracy he would be equally guilty with the others in taking all of the turkeys. But the court is not bound to believe his statement, that there were but three turkeys taken in the face of the solemn plea of guilty whereby the defendant admitted he took five turkeys, or was concerned with Otto Seerup and others in the stealing of five turkeys. The defendant seems to have the impression that the court is bound by the statements which he made in his confession or upon his examination before the court after plea and before sentence. Under the provisions of § 10,944 the court is required to file "an official statement of the facts and circumstances constituting and surrounding the crime whereof the prisoner was convicted, . . . together with all other information accessible in regard to the career of the prisoner prior to the time of the committal of the crime of which he was

convicted relative to his habits, associates, disposition and reputation and
victed relative to his habits, associates, disposition and reputation and
any other facts and circumstances which may be capable of throwing
light upon the question as to when such prisoner may be capable of
becoming a law-abiding citizen." To get the necessary information the
court questioned the defendant; but the court was not bound to accept
his statements as true. The court may disbelieve all that the defendant
says on such an examination. The record shows that on this examina-
tion the defendant denied ever having been in trouble before except
on one occasion, which he could not very well deny because he had been
brought before the same judge. So far as the defendant's admissions
were concerned the information is vague because the defendant said
to the judge that this previous charge was "about that peddler busi-
ness. I think that you were the judge then and sentenced me—we took
that peddler's wagon and took the wheels off from it—we were fined
$50 apiece." But the record in this case includes the transcript of the
testimony of the co-defendant Otto Seerup which was given under oath,
and an examination of this transcript shows that this "peddler" had
been robbed by the defendant Jochim. In order to show the situation
as seen by the court it will be necessary to refer to the facts in the two
cases. The defendant Seerup is a young man, twenty-five years of
age, and married to a sister of the defendant Jochim. Jochim is
thirty-two years of age and this same record shows that the plot to
steal the turkeys was hatched in Jochim's house. Seerup admitted
complicity in an extensive series of larcenies covering a period of
years, and that he had been tried for horse stealing but the jury dis-
agreed. Jochim made an unsworn statement to the effect that the
"peddler business" and this "turkey business" were the only difficulties
he had ever been in, but the transcript of the testimony of Seerup his
co-defendant shows to the contrary. We set forth some of this testi-
mony in order to show the court's reason for disbelieving this defend-
ant. A portion of the testimony is as follows: "Q. And the only time
you were mixed up with Leo in stealing was when you stole the calves,
two calves, horses, turkeys and corn, is that all? A. I think so. Q.
Any other times? A. I can't think of any now. Q. Did he say
whether or not he had been in the business of stealing stuff before?
A. I know he has been for the last seven or eight years. Q. What do
you know of him stealing besides the last transactions you have men-

tioned? A. I know that he has been stealing stuff ever since he robbed a peddler from Bismarck. Q. And he has been stealing stuff ever since that time? A. Yes. Q. He plead guilty to robbing him? A. I guess he did. Q. What else do you know about him stealing? A. Well, he has stole little things, horse collars and things like that. Q. He told you that did he? A. Yes, sir."

The witness Seerup had earlier in his examination detailed the incidents regarding the stealing of the calves, corn and horses. It is quite evident the court did not believe Jochim; in fact the record shows the court distinctly told the defendant: "You claim of course that you were just in this one deal. I am satisfied that that is not true. I am satisfied that you have not come through with it as you should have done, and that is going to make some difference in your sentence, and in your treatment." Evidently the court did not believe the defendant on his examination nor did he believe all that was stated in his confession. How could he believe that in the face of the defendant's solemn plea of guilty of the charge set forth in the information? It is a matter of fact and notoriety that many defendants do not tell the truth fully and completely when confronted with their crimes and when they stand before the court to receive sentence. They make the case as easy for themselves as possible. This is human nature. It is understandable even though reprehensible. One does not need to have very much experience with criminals to know that very little reliance can be placed upon statements made under such circumstances. Where a man is guilty very frequently a plea of guilty is entered in order to assist himself—in fact this is what the defendant did for in his confession he says: "This defendant does hereby give his solemn promise and word of honor that he will obey the law, that he desires to plead guilty to the charge—and hereby appeals to the court for the exercise of such clemency as the court may in its judgment find just under all the facts and circumstances." Of course the defendant was trying to make as plausible a story as he could. The record shows he was caught practically redhanded and recognized. He knew he could not escape and so he attempted to curry favor with the court. The court examined him with reference to other charges such as the stealing of a calf and other property. The defendant denied all complicity in any of the crimes except the stealing of the turkeys. It was the duty of the lower

court to sentence him and in its discretion the court could have sentenced him to five years in the penitentiary. The court saw fit under all the circumstances in the case to impose a sentence of three years. Defendant says this court has the right to modify that sentence and in support of that contention cites § 11,015 which provides that on appeal "the supreme court may modify the judgment appealed from, and may modify any or all the proceedings dependent upon such judgment or order." The appellant contends that this section empowers the court to exercise a review of the discretion of the lower court in passing sentence, and if in the judgment of this court the sentence imposed is "excessive" it is the duty of this court to modify the judgment. It will be observed that this section says nothing about modification of judgment "in the furtherance of justice." This phrase, which might invoke the discretion of the higher court, is not included in the statute. Section 60,003 of the Rev. Laws in force in Oklahoma in 1916 gave the supreme court "the power to modify any judgment appealed from when deemed proper in the furtherance of justice." Under such section the supreme court of Oklahoma says that the modification of a judgment is not a matter of clemency or grace, but of justice, and in the case of Anthony v. State, 12 Okla. Crim. Rep. 494, 159 Pac. 934, the court reduced a sentence for murder in the first degree from death to life imprisonment. Our statute does not give this court such power. The term "excessive," as ordinarily understood, means beyond the limits fixed by statute. While there may be courts which have construed the term "excessive" to mean "harsh" and unjust under the circumstances of the case yet the general construction has been what the term itself implies—exceeding the power granted by law. Most of the recorded cases dealing with the modification of judgment and sentence are cases where the limits fixed by statute were exceeded. Such was the condition in the cases of State v. Wisnewski, 13 N. D. 649, 102 N. W. 883, 3 Ann. Cas. 907, and State v. Stevens, 19 N. D. 249, 123 N. W. 888. It is the province of the district judge to pass sentence in the case, exercising his discretion in the assessment of punishment, and being within the limits fixed by statute. In this case the defendant could have been sentenced to serve five years in the penitentiary. The court kept within that limitation. There was no judicial error in the sentence. The question of mitigation is one for the authorities

constituted for that purpose and appeals for clemency should be made to them. Where a defendant has been convicted in accordance with law and found guilty of an offense greater than the one proved, or upon conviction has been sentenced beyond the limitations prescribed by statute, the courts have uniformly modified the sentence so as to bring the conviction within the facts proved or the sentence within the limitations prescribed. Under such circumstances as this the courts have uniformly held that the application for clemency or reduction of sentence should be made to the pardon board or the board of parole. See State v. Rozeboom, 145 Iowa, 620, 29 L.R.A.(N.S.) 37, 124 N. W. 783. That the question of the severity of the punishment, if within the limitations of the statute, is not one for the higher court is set forth in Hall v. State, 113 Ark. 454, 168 S. W. 1125, where the court says: "It was the peculiar province of the jury to weigh the testimony of the witnesses, and this court is not at liberty to reduce the punishment, even though we might think it too severe." The case cited was a prosecution for murder where it was the duty of the jury, as in this state, to assess the punishment. The defendant proceeds on the theory that the only "evidence" in the case is the confession of the defendant, and that the court is bound by the statements in this confession and the statements elicited upon the examination of the defendant in his plea of guilty. The defendant argues that this "evidence" shows the defendant was guilty of merely petit larceny. It is sufficient answer to say that there was no "evidence" taken in the case. There was no need for evidence. There was no trial by a jury, for the defendant entered a plea of guilty. The "confession" of the defendant and all other extraneous matters could be used, and doubtless were used by the court in determining the proper punishment in the case. It was the duty of the court to ascertain the character of the defendant, the degree of culpability and anything which would throw light upon this situation. No one would contend, for instance, that if the defendant had been an old offender the court would not be justified in inflicting a severer punishment than if this were the first offense; neither could one generally contend that the court should not consider whether there was reasonable ground to believe the defendant was concerned in a series of similar crimes. The court has a wide latitude in passing sentence, and doubtless took all of these matters into consideration.

We are here to review judicial errors. But an exercise of judgment within the limitations fixed by statute is not a judicial error. There is no merit in the contention that the sentence imposed is "cruel and unusual." The term "cruel" refers to the form of the punishment and its infliction as barbarous; the term "unusual" is used in reference to the frequency. It is neither "cruel" nor "unusual" to sentence a man to the penitentiary for grand larceny. To come within this prohibition it must be both cruel and unusual. To revive some of the old penalties such as amputation of the hand that seized the turkey, burning at the stake, boiling in oil or the placing of the defendant in the stocks or pillory might be considered "cruel" or "unusual" punishment; but the penalty imposed in this case is the usual and ordinary one.

The judgment of the lower court is affirmed.

BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.