LEONARD SCHERR, Respondent, v. STEPHEN A. FISCHER et
al.  FIRST STATE BANK OF STRASBURG, a Domestic Cor-
poration, Appellant.

(226 N. W. 481.)

Opinion filed July 26, 1929.

*Charles Coventry* and *Zuger & Tillotson,* for appellant.

*Lynn & Lynn,* for respondent.

BURKE, Ch. J. In 1908 Joseph Schmalz filed a homestead on the N½ of the NE¼, and the N½ of the NW¼ of section 32 in township 130, N. of range 77, W. of the fifth principal meridian. Two years later he married, his seven children were born upon said land and lived thereon with their father and mother until November, 1923.

In 1921 Schmalz purchased a tractor, giving as security a mortgage upon said land for $1,500 to the Union Investment Company, a second mortgage to the bank for $4,996.35 and a chattel mortgage on all his personal property. In 1924 the first mortgage was foreclosed and a certificate of sale issued August 9, 1924. In 1925, the second mortgage was foreclosed by action, and judgment was rendered against Schmalz and wife for the amount due. The bank bid in the land at foreclosure sale for $1,000, and the defendants claim in this action, that the balance unpaid on the judgment, is a first lien on the said land, although no effort has been made to enforce the collection of the judgment against the land, and no such claim was made until after this action was brought.

On November 13, 1923, Schmalz filed a petition in voluntary bankruptcy, in which he claimed this land as his family homestead. On the 30th day of November, 1923, he was adjudged a bankrupt, and S. A. Fischer one of the defendants was appointed trustee of the bankrupt's estate.

About the 20th of November, 1923, Schmalz notified the bank in writing, that he was going to leave the farm in a few days, and requested the bank to take care of the property on which it had a chattel mortgage, and either at that time, or in the following January, he enclosed in a letter the keys to the farm buildings; but according to his testimony, and the testimony of Joseph Reinbold, he kept duplicate keys in his possession.

On November 22, 1923, he moved his family to Linton where he remained eleven months, sending his children to school, working part of the time as janitor at the school house, and part of the time as a cream buyer. He and his wife registered as voters, and voted at the 1924, primary election in Linton, prior to that time he always voted in the precinct where his land was located, and since that time, he and his wife have voted in the precinct where their farm was situated. In the fall of 1924 he went to his home precinct, and with the aid of relatives began the operation of a cream station and a small country store.

On July 30th, 1925, just before the expiration of a year of redemption from the first mortgage sale he and his wife gave a quit-claim deed to his wife's brother, Joseph Reinbold, and Reinbold redeemed from both mortgage sales, the bank having succeeded to the interest of the first mortgage, received and kept the money on both redemptions. Schmalz testified that he expected to redeem the land with money coming from the estate of his wife's father, amounting to about $8,000, and while the mortgage debts were more than the value of the land, his wife had signed the notes and mortgages, and that since she would have to pay the judgment anyway, he thought it better to redeem and pay the judgment out of his wife's inheritance, and thus save the land, but they did not get her share of the estate, as it had been garnisheed by the bank in an action to enforce the judgment in a foreclosure action. The defendant, Stephen A. Fischer, who was

executor of the estate testified that the garnishment proceeding was brought to force a settlement with Schmalz.

In December, 1924, the chattel mortgage on the personal property was foreclosed, and on September 7, 1925, Reinbold sold the land to the plaintiff, Leonard Scherr, for $3,600 giving a warranty deed therefor, and paid to Schmalz the sum of $800 the difference between the price of redemption and the amount at which the land was sold to Scherr, and with this $800 Schmalz established a new home for himself and family.

On the second day of September, 1926, the plaintiff brought this action to determine adverse claims, and quiet title to the said land. There was a judgment for the plaintiff, from which the First State Bank of Strasburg duly appeals, demanding a trial de novo in this court.

It is conceded that the only question in the case is a question of fact, viz., did Joseph Schmalz abandon his homestead when he moved to Linton in November, 1923? The trial judge in his memorandum opinion says:

"In this case, it clearly appears that the abandonment of residence on this land by Schmalz was not 'voluntary' but was forced upon him as a means of feeding and clothing his family. Everything he did was consistent with his declared intention, when he moved away, to redeem the land and return to his residence upon it, except the single fact that he registered and voted at a primary election in Linton. While that is a strong circumstance tending to show abandonment of a former place of residence, and adoption of the one where his voting is done, it is not conclusive. Many men ignorantly think that they have a legal right to vote in a precinct in which they have 'lived' the required length of time, no matter where they may in good faith, claim their permanent 'home' to be. This is all bad law, of course, but should be considered when dealing with men of the mental caliber that Schmalz disclosed. His remaining away from the farm up to the time he sold it to Reinbold was forced upon him; his family had to eat; and under the circumstances disclosed, it was perfectly consistent with his declared intention relating to his homestead on the land here involved."

Stephen Fischer testified, that in November, 1923, the bank received a letter from Schmalz written in his handwriting, that it was

not filed in the bank, and that to the best of his recollection it stated, "I sent you the keys, I am going to quit the place and turn over everything and get off the farm;" and that this was the only letter that he ever received from Schmalz. Joseph Fischer testified to the same effect, as also did Joe Dillman, an employee in the bank. · Schmalz testified that he did not write to the bank, but on the 20th day of November, 1923, two days before he moved to Linton, he went to the office of Attorney Marr, at Linton, for advice as to his rights, and Attorney Marr, after advising him, wrote a letter in typewriting, in substance, that Schmalz was moving in to Linton, that he would stay on the farm only two days more, and the bank should take care of the personal property, farm machinery, horses and cattle upon which it had a mortgage. Schmalz states, that he did not write any letter himself to the bank, but had Attorney Marr write the letter in typewriting, and in corroboration of his statement he produced a carbon copy of the letter, "Exhibit 6."

The fact that he went to an attorney's office for advice is a circumstance which corroborates his statement that he was not giving up his homestead, for it would seem that if he were turning everything over with the intention of abandoning his homestead right he would not have incurred further expense by seeking the advice of a lawyer. The circumstance that his wife signed the mortgage; and that the judgment was against her as well as her husband, and would have to be paid when her father's estate was settled out of her inheritance, is also a good reason for wanting to redeem the land from the mortgage sales, as stated by the trial court in memorandum opinion, viz.:

"The evidence upon the question of Schmalz' 'intention to return' to the land or his intention to abandon his homestead interest in it is not as full as it might be. His wife, who was equally interested in that matter, was not called as a witness. However we are aided somewhat by the practical construction of the whole transaction put upon it by the defendants, the Bank especially, as shown by what they did at the time. It was, at first, claimed by the defendants, that their 'mortgage lien' on the land continued right along, the same after the sale to them, as before, and for the full amount. That claim seems, now, to have been abandoned, and with sufficient reason. It was not tenable. The *mortgage* lien was exhausted by the sale. If the bank

has a lien at all, it is because the Schmalz homestead interest in the land had been abandoned *before* he conveyed to Reinbold, and the lien of the *judgment* as such, had then attached to the land."

It is also claimed that Schmalz removed posts from the land to which was attached a clothes line, and also removed certain water pipes, but it is undisputed that these were not removed until after Schmalz had sold the land to Reinbold in July, 1925. Schmalz did not sell the land to Reinbold until it was apparent that he could not redeem from the foreclosure sales on account of having his wife's inheritance tied up in the garnishment proceedings.

It being conceded that the land in question was a homestead, the burden was upon appellant to establish by a preponderance of the evidence, that Schmalz had abandoned it, and this it failed to do, and the judgment of the trial court is affirmed.

CHRISTIANSON, BIRDZELL, NUESSLE and BURR, JJ., concur.