STATE OF NORTH DAKOTA, Respondent, v. F. C. TURNER and Edwin C. Turner, Appellants.

(229 N. W. 7.)

Opinion filed January 15, 1930.   Rehearing denied February 17, 1930.

*Jacobsen & Murray,* for appellants.

*George H. Drowley,* State's Attorney, and *Sullivan, Hanley & Sullivan,* for respondent.

Burr, J. The defendants are charged with the crime of assault and battery with a deadly weapon with intent to kill, committed in Sioux county. Upon application of the defendants a change of place of trial was granted to Morton county. The defendants were found "guilty of the crime of assault with a deadly weapon with intent to do bodily harm but not with the intention to kill." Defendants made a motion for a new trial which being denied they appealed to this court. With the notice of appeal the defendants served "specifications of error" as follows:

"The defendants hereby specify as specifications of error, the specifications of error served and filed with the motion for new trial herein, and hereby adopt and re-state and re-allege each and every one of said specifications of error with the same force and effect as if each and every specification were herein fully set out."

Specifications of Insufficiency of the Evidence.

"The defendants hereby specify as their specifications of insufficiency of the evidence the specifications of insufficiency served and filed with the motion for new trial herein, and hereby adopt and make same a part hereof with the same force and effect as if each and every one of said specifications were fully set out herein."

On turning to the specifications of error attached to the motion for a new trial we find five as follows:

"1. That the jury received out of court evidence other than that resulted from a view of the premises, and has received out of court communications referring to the case.

"2. That the jury separated without leave of the court after retiring to deliberate upon their verdict, and that the jury have been guilty of misconduct by which a fair and due consideration of the case has been prevented.

"3. That the verdict has been decided by lot and by other means than a fair expression of opinion on the part of all the jurors.

"4. That the court has misdirected the jury in a matter of law, and

has erred in a decision on questions of law arising during the course of the trial, and has done and allowed acts in the action, prejudicial to the substantial rights of the defendants.

"5. That the verdict is contrary to law and clearly against the evidence."

With reference to specifications 1, 2 and 3 as quoted there has been nothing offered in support thereof and so these are dismissed from consideration.

With reference to specification 4 there has been no argument in regard to decisions "on the questions of law arising during the course of the trial" except so far as they bear upon what is said to be misconduct on the part of the trial judge.

The appeal therefore presents to us three propositions, as outlined in appellant's brief: (1) That the court erred in instructions to the jury; (2) that the court was guilty of misconduct prejudicial to the rights of the defendants; (3) insufficiency of the evidence to justify conviction.

The objections to the charge to the jury are twofold. It is said the court left out a material and essential element of the crime, in that the court failed to state that among the material allegations the state was required to prove was that any force used by the defendants upon the complaining witness was without justifiable or excusable cause; and that the court did not instruct properly on the elements of self-defense. It is said that this essential element, without justifiable and excusable cause, "does not appear either in the information or in the verdict."

The defendants were informed against under the provisions of § 9519 which says: "Every person . . . who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as was likely to produce death, etc." The information charged that the defendants "did then and there wilfully and unlawfully and feloniously by means of a certain deadly weapon to wit: a certain hickory pick-axe handle or helm did make an assault and battery upon the person of one A. M. Jeppeson with intent then and there wilfully, unlawfully and feloniously, to kill said A. M. Jeppeson, etc." There was no demurrer to the information, and no objection to the introduction of any testimony on the ground that the information did not state a crime. The verdict was returned under the provisions of § 6549 of the Code, for an offense included in the offense described in § 9519.

See State v. Johnson, 3 N. D. 150, 54 N. W. 547. If the information should have used the term "without justifiable or excusable cause" the defendant could have raised that question before the introduction of testimony. The information charged that the acts were done unlawfully and feloniously. The term unlawfully meaning contrary to law and negatives the idea of justifiable or excusable cause. In the absence of any objection to the information we need not state whether it was necessary to use such phrase in drawing an information under the provisions of § 9519.

But it is charged the court when defining the essential elements did not define "without justifiable or excusable cause." The court charged the jury that each and every material allegation contained in the information had to be proved to the satisfaction of the jury beyond a reasonable doubt, and then proceeded to define the crime charged against the defendants. The court read § 9519, stating that this is the crime with which the defendants were charged. The court then stated there was an included crime setting forth the crime defined in § 9549. The court then proceeded to define assault in the language of the statute and after defining the terms "unlawfully" and "feloniously" proceeds to define the terms "deadly" and "dangerous" weapons. The court continued by stating the material allegations set forth in the information, giving this portion of the charge to which the defendants take exception:

"If you fail to find each and every one of those allegations to be true beyond a reasonable doubt then you cannot find the defendants guilty of that crime. If you do not find the defendants guilty of that crime you may consider whether or not they are guilty of one of the included offenses. The included offense of assault and battery with intent to do bodily harm contains the following material allegations; That the defendants, C. F. Turner and Edwin C. Turner, were in Sioux county on or about June 1, 1928; (2) that at said time and place they wilfully, unlawfully and feloniously struck A. M. Jeppeson; (3) that the defendants struck A. M. Jeppeson with a hickory pickaxe handle; (4) that such pickaxe handle was a deadly weapon; (5) that the defendants intended to do A. M. Jeppeson bodily harm but did not intend to kill him. If you do not find the defendants or either of them guilty

of the higher offense that has been explained to you you may consider whether or not they are guilty of this included offense. It will be necessary, however, before you can find either of them guilty of said offense to find each and every allegation true beyond a reasonable doubt. If you do not find each and every allegation true beyond a reasonable doubt then you cannot find them guilty of that offense."

It is said nowhere therein does he define "without justifiable and excusable cause." However in a later portion of the charge the court charged the jury as to when force was lawful and quoted portions of § 9547 dealing with self-defense and defense of property.

The defendants in their brief devote considerable space to the complaint that the court did not properly and fully define the rights of self-defense. It is not claimed there was any request for further instructions but the appellants say that though the court instructed as to self-defense the alleged error in failing to further define justifiable and excusable cause was not "cured by the court instructing on self-defense because the court did not instruct the jury that the lack of the existence of self-defense was a necessary essential to the crime. The court did not even instruct the jury that the burden of proof was on the state to prove lack of self-defense." But the court did instruct the jury that the burden of proof was upon the state to prove each and every material allegation beyond a reasonable doubt.

It is said that this court in State v. Hoerner, 55 N. D. 761, 215 N. W. 277, requires the court to instruct separately on this element. What the instructions shall be depends upon the issues raised by the information, the defense and the proof. The court does not need to instruct as to matters of justification not raised by the evidence and may even refuse to so instruct. See Cox v. State, 99 Ark. 90, 136 S. W. 990. Therefore "where there is no evidence in support of the defense of self-defense an instruction with regard thereto need not be given." 5 C. J. 801, State v. Yates, 132 Iowa, 475, 109 N. W. 1005. See also Yarborough v. State, 66 Tex. Crim. Rep. 311, 147 S. W. 272. On the other hand as stated in 5 C. J. 800: "Where there is any evidence tending to raise the issue, regardless of its apparent weight, or the fact that it is conflicting, the court should fully and clearly instruct on the rights of self-defense." State v. Fredericks, 136 Mo. 51, 37 S. W.

832; Fisher v. State, 74 Tex. Crim. Rep. 229, 168 S. W. 528. As said in State v. Janke, 238 Mo. 378, 141 S. W. 1136, "the instructions should be broad enough to allow accused to defend himself against any kind of assault established by the evidence." It is true that in the case of State v. Hoerner, 55 N. D. 761, 215 N. W. 277, supra, this court said "the burden of proof is always upon the State even where the defense of self-defense is interposed" and that "it is the duty of the state to prove there was no justification or excuse in law and that this necessarily means the state must negative any justification of excuse." This is the established rule in this jurisdiction. See State v. Hazlat, 16 N. D. 426, 113 N. W. 374. But absence of any proof of right to self defense is sufficient negative.

But the court in the case at bar did charge the jury the defendants had a right to use force at times, and under what circumstances this right was justifiable. Thus the court told what use of force by the defendants would be lawful and the court told the jury the state must prove that the use of force by the defendants was unlawful. The court is not required to needlessly repeat instruction. Needless repetition is to be avoided. When the instructions are complete and intelligible there is no necessity for repetition; in fact repetition may be confusing and can be of such a nature at times as to over emphasize one fact of the case to the detriment of the rights of the other side in the prosecution. If the defendants deemed further instruction was necessary to properly present their view they should have made a request to the court. It is true the court must fairly present the issues but when this is done it is sufficient in the absence of request for more definite instructions.

It is stated however that the court erred in this portion of the charge:

"The right to use force to prevent unlawful interference with real or personal property in one's possession depends upon the possession of the property. That is, before one has a right to use force under these circumstances the property must be in his possession at the time he uses the force. *In this case there has been a number of rulings of the court rejecting testimony with reference to the taking of the defendants' cattle. The reason for this is that the question of the rightfulness or wrongfulness of taking up of defendants' cattle is not included in this case.*"

There was no error in this portion of the charge. The undisputed facts in the case show without contradiction that if any of defendants' cattle had been taken up and were in the possession of the party represented by Jeppeson the taking occurred some time before. In fact the defendants in their brief say:

"It was the defendants' contention and they sought to prove that the complaining witness and the round-up crew came to defendants' home on the day of the alleged assault, and shortly before the assault, and the defendants were absent from their home, and took forty head of defendants' cattle, and drove them away, and locked them up in a corral several miles away."

Appellants say that it was the taking of the cattle which prompted defendants to ascertain the cause of their being taken, that the taking was in fact stealing and the defendants should not be barred "from at least interviewing the wrongdoer to ascertain why he has taken his cattle and why he is keeping them." It will be noted this feature is not involved in the charge. The court charged that whatever may have been the status of the cattle it did not justify the theory of defense of property; that the defendants would not be justified in making an assault even upon a wrongdoer, for the taking of cattle at some earlier time. If the view contended for by defendants be correct then if a man's house be burglarized and later he meets the burglar in a different place he has the right to assault him. Whatever may have been the rule in regard to cattle rustling some decades ago, when the rustler was met by the avenging party, that rule is abrogated today.

The defendants take exception to this portion of the charge:

"If the defendants had any reasonable cause to believe from words, acts or conduct of A. M. Jeppeson that he had a design to do either of them some bodily injury or that such design was about to be accomplished, then the defendants had a right to act on appearances and use such force as to them seemed necessary to prevent such injury, but the defendants would not have the right to avail themselves of the claim of necessary self-defense if the necessity for such offense was brought on by their own deliberate, wrongful acts. One of the essential elements of self-defense is that defendants must be free from fault, that is, thy must not say or do anything for the purpose of provoking a dif-

*ficulty, nor must they be disregardful of the consequences in this regard
or any wrongful word or act on their part."*

The court here is charging defendants have no right to provoke an assault for the purpose and with the intent to make an assault themselves and then claim self-defense. The defendants had no right to plan a situation wherein they could tempt a person to do something as justification for an assault upon him, as then they would be the real aggressors. "One may not by his own willful act create a situation giving rise to appearances which he may interpret as endangering his life, and thereupon kill the person he is in fact assailing" (People v. Finali, 31 Cal. App. 479, 160 Pac. 860), for "the plea of self-defense is not available to one who was at fault in provoking the difficulty" (Carter v. State, 18 Ariz. 369, 161 Pac. 878). Erwin v. State, 29 Ohio St. 186, 23 Am. Rep. 783, 2 Am. Crim. Rep. 251, decided 1876, may be an old case but it goes fully and exhaustively into the question of self-defense, provoking assault and excuse, and is cited in 3 Modern American Law, 578, as a leading case. Here at 23 Am. Rep. 739, the court says: "It is true that all authorities agree that the taking of life in defense of one's person cannot be either justified or excused, except on the ground of necessity, and that such necessity must be imminent at the time; and *they also agree that no man can avail himself of such necessity if he brings it upon himself."* Swan v. State, 13 Okla. Crim. Rep. 546, 165 Pac. 627 cited by defendants, says where a difficulty is prepared, sought and provoked by the defendants for the purpose and with the intent on the part of the defendants to assault the adversary the right of self-defense cannot be invoked. Of course, as stated in Boyer v. State, 16 Okla. Crim. Rep. 388, 183 Pac. 621 (another case cited by defendants) "in order to deprive the defendant of the right of self-defense' the difficulty must be prepared for, sought and provoked for the purpose and with the intent on the part of the accused to take the life of the deceased or do him bodily harm' and the jury should be so instructed,"—quoting from Swan v. State, 13 Okla. Crim. Rep. 546, 165 Pac. 627, supra. It is said the court in the case at bar stated the defendants "must be free from fault" and that this destroys the right of self-defense. The expression "must be free from fault" must be taken in connection with the whole charge, for the court says they must

be free from fault in their attempt to provoke a difficulty so as to claim self-defense. The defendants did not ask any further instructions in regard to this feature and we cannot see that the charge unduly limited the right of self-defense.

It is said there was misconduct on the part of the trial judge. This alleged misconduct deals with the attitude of the trial judge toward the counsel for the defendants during the trial. The record is silent as to what the counsel for defendants was saying to the jury except that the court said: "Take it into the record that this attorney has stated that the witnesses were protected by the rulings of the court." It seems counsel had been interrogating a witness for the state and the witness turned to the court and asked if he was required to answer that question. The state objected to the question, and the court sustained the objection. The counsel in arguing to the jury made some statement which the court says amounted to the charge "that the witnesses were protected by the rulings of the court." If this is correct statement of the purport of counsel's argument it was highly offensive and disrespectful toward the court. It was an insinuation that the court was by its rulings preventing the defendants from bringing out something to which they were entitled. Counsel then stated that he wanted to argue this feature of what the defendant had said on the witness stand "Do I have to answer that question?" saying to the court "May I argue that? I don't want to be fined." The court replied by saying "I do not want you to make any remark to that jury that any witness was protected by any ruling of this court. When the court makes a ruling that evidence is inadmissible, it is improper for an attorney to go before the jury and make argument that the evidence should have been let in, it is improper."

Again the record shows the court stated that the counsel for the defendants "has been devoting several minutes talking about the attorneys in the case instead of talking about his case and the court called him down on it." This is alleged as misconduct on the part of the court. To substantiate the charge affidavits were filed on the part of the defendants wherein affiants say in effect that the trial judge in making his remarks and statements to the counsel of the defendant appeared to be angry and spoke in angry tones, in talking to the attorneys for the

prosecution "it was in an altogether different tone, a tone of friendliness and flattery; that it clearly appeared to me as a bystander that the trial judge's tone and manner of speaking indicated that he favored the prosecution and was against the defendants, and that the trial judge was of the opinion that the defendants were guilty." In the transcript counsel for the state indicates what counsel for the defendant had been saying, which called forth the reproof of the court. The record shows:

"Let the record show that this is being said outside of the presence of the jury. In view of the fact that counsel has stated that we have been hired by his Satanic Majesty in Sioux county as counsel in this case and on account of the fact that we have been hired by some person who wants to make himself King, or words to that effect, the jury is entitled to know by what authority we are in the case, and I proposed to tell them that we are hired by the county commissioners of Sioux county."

Counsel for the defendants does not deny he made such a statement to the jury. The court was perfectly justified in requiring him to desist from such denunciation. There is nothing in the record whatever showing counsel for the prosecution were employed by "His Satanic Majesty in Sioux county." Whatever may be the local current knowledge we cannot take judicial knowledge of any such arrangements. Counsel for defendants says:

"It should need no argument to convince the fair judicial mind that a statement made in the presence of the jury that attorney for the defendant has insulted the court, that he should be fined for contempt tends to impair the influence of the attorney with the jury."

If counsel insults the court so that he should be fined for contempt it is not the court which impairs his influence with the jury, it is himself.

The last general specification of error is that the verdict is contrary to the evidence introduced. There is abundant evidence to sustain the verdict if the jury believed the witnesses for the state. It seems that the Defendant F. C. Turner is a rancher in Sioux county and the defendant Edwin C. Turner is his son. In June, 1928, one A. M. Jeppeson was in the employ of the U. S. Government in control of some of the Indian affairs in Sioux county; under his orders cattle belonging

to the defendants were taken up on the charge of trespassing on the Indian lands. Soon after F. C. Turner was informed by his wife that the cattle had been taken by Jeppeson. The defendants claim their sole purpose in calling on Jeppeson was to have their cattle released, but in preparation for this peaceful mission they themselves admit they took with them three rifles, a peace of gas pipe and a pick axe handle. They went over to where Jeppeson was with his force engaged in rounding up horses. There is a dispute as to what took place there. Several witnesses for the state testify that upon arriving, Turner, Sr., called for Mr. Jeppeson and when Jeppeson appeared in answer to the summons, drew a gun on him, commanded him to throw up his hands, ordered the son to strike the "s—— of a b——" and "kill him," etc. According to these witnesses the son did strike him four or five times on the head and on the body all the times with Jeppeson's hands in the air, and when one of Jeppeson's assistants stepped forward to interfere he held the gun on him, and told him if he took a step forward he would be "a dead Indian." They compelled Jeppeson to go into the car; in the meantime the father telling the son to kill him if he made a move, but claim they did this because they thought Jeppeson was reaching for a revolver, and that he was struck by the pick axe handle to knock the revolver from his hand. The father admits he held a gun on Jeppeson, that he pumped a shell into it, that he ordered the son to hit him with the club, and that he told at least one of the assistants that if he took another step forward he would be a dead Indian; Jeppeson said he had no revolver and no revolver was knocked from his hand. All of the state's witnesses, show that before Jeppeson could do anything he was ordered to throw up his hands, and his hands took the air with no gun in them, and it was not until thereafter he was hit on the head, arms and body from behind. There is ample evidence to sustain the verdict.

The court in passing judgment sentenced the defendant F. C. Turner to serve a period of from one to three years in the state penitentiary and the defendant Edwin C. Turner to serve a period of sixty days in the county jail. The defendants say this is a cruel and unusual punishment. This matter is settled by the decision of this court in State v. Jochim, 55 N. D. 313, 213 N. W. 484 and State v. Kingen, 58 N. D. 327, 226 N. W. 505. Before such a case as this should be reversed,

where the guilt of defendants is so clearly shown, error affecting the substantial rights of the defendants should be shown. No reversible error being shown the judgment of the lower court is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.